Filed 9/14/15  Marriage of Wallace CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of SHARONDA and SHEDRIC WALLACE, JR. | |
| SHARONDA P. WALLACE, | E060565 |
| Respondent, | (Super.Ct.No. FAMSS906485) |
| v. | OPINION |
| SHEDRIC WALLACE, JR., | |
| Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael Torchia, Temporary Judge.  Affirmed.

Shedric Wallace, Jr., in pro. per., for Appellant.

Lenita A. Skoretz for Respondent.

After a seven-day marriage dissolution trial, the court issued a domestic violence restraining order against appellant Shedric Wallace, Jr., and awarded his former wife, respondent Sharonda Williams, sole legal and physical custody of their child.  The court

also granted Sharonda's[1] request to move to Texas and directed her to make the child available for weekly telephone conversations with Shedric. It ruled that any in-person visitation with Shedric must either occur in Texas or under family supervision in California until Shedric participates in family (or "conjoint") therapy with the child and attends an anger management program.

Representing himself in propria persona, as he did during trial, Shedric challenges several aspects of the proceedings below. His arguments on appeal can be summarized into the following claims: (1) the evidence supporting the restraining order was insufficient; (2) the trial court applied the incorrect standard when determining custody; (3) the therapist who provided conjoint counseling was biased and unqualified to offer expert opinion; (4) the court violated his due process right to a court-appointed child custody evaluator; and (5) the attorney who represented him for about one year in pretrial proceedings provided ineffective assistance of counsel. Shedric asks that "all rulings since [his] counsel was appointed be vacated," or in the alternative that "the judgment be reversed, and the case remanded for new trial." We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Because the record on appeal is incomplete, we take most of the background facts from the court's 24-page trial ruling. Although there were other aspects to the dissolution proceeding, such as child and spousal support, division of property, and attorney fees, we

---

[1] We will refer to Sharonda and Shedric Wallace by their first names when speaking of them individually. We mean no disrespect by the use of their first names.

discuss only the facts pertinent to the rulings at issue on appeal, i.e., the restraining order, custody, and visitation.

The parties were married for about seven years and have one child together, a son born in 2005. They separated in November 2009, when Sharonda sought a restraining order under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.) as well as a complaint seeking marital dissolution.[2] In her request for a restraining order, Sharonda alleged that Shedric had yelled obscenities at her, choked her, slammed a cast iron skillet on the kitchen counter and pointed the handle of the skillet in her face, and smashed her cell phone when she attempted to call the police.[3] She alleged that this occurred in front of the child at their marital residence. She also alleged that Shedric had been physically and verbally abusive to her on multiple previous occasions and that she was afraid of him.

The court issued a temporary restraining order and awarded Sharonda sole legal and physical custody of the child. The court also ordered the parties to attend mediation through family court services. The mediator recommended that the parties attend individual counseling sessions and that Sharonda arrange for individual counseling for the child. Sharonda began seeing a therapist and taking the child to a different therapist

---

[2] The domestic violence action and dissolution action were consolidated before trial.

[3] By order of August 4, 2014, we granted defendant's motion to augment the record as to two of the documents attached to his motion. As to the other documents, the order deemed them part of a request for judicial notice to be considered with the appeal. We now grant defendant's request for judicial notice.

3

for counseling. It appears from the record that Shedric did not participate in individual counseling. The child's therapist recommended that Shedric attend an anger management program and participate in conjoint therapy with the child.

In October 2011, about two years into the proceedings, the parties entered into a stipulation governing the duration of the temporary restraining order, visitation, and the commencement of conjoint therapy sessions between Shedric and the child. The stipulation stated that "an act of domestic violence occurred at the marital residence on 11/3/2009 sufficient to result in the issuance of a domestic violence temporary restraining order." The parties agreed that the restraining order would remain in effect for one more year and that Shedric would have visits with the child on alternating weekends. They also agreed that Shedric would begin attending family counseling sessions with the child and they selected Dr. Beth McGuire as the conjoint therapist.

In the year following the stipulation, Shedric made several filings in which he questioned the neutrality of both the conjoint therapist and the child's individual therapist. Shedric alleged that the conjoint therapist: (1) had developed a conflict of interest as a result of a billing issue; (2) had a "long and personal" relationship with Sharonda's counsel; and (3) worked in an office located in the same part of Redlands as Sharonda's attorney's office and the former office of the commissioner presiding over the case (when he was a practicing attorney). The court denied Shedric's request to remove the conjoint therapist. However, the court also discontinued the conjoint therapy based

4

on its finding that Shedric was not participating in the sessions and "expressed no need or desire to continue with therapy."

The dissolution trial took place over seven days, from late November 2012 to late July 2013. Shedric included only two days of trial transcripts in the record on appeal. During those two days, the court heard testimony from Sharonda, Shedric, and the conjoint therapist.

Sharonda described the domestic violence incident and the injuries she sustained as a result of Shedric choking her. She testified that the child had witnessed much of the incident. She also testified that she remained "tremendously afraid" of Shedric for several reasons. Namely, because he had been attempting to send messages to her through the child in defiance of the restraining order and because he refused to accept responsibility for his actions or take any steps to alleviate his anger or abusive behavior. She acknowledged that Shedric had never been physically abusive toward their son, but she stated that the child still had nightmares about the incident and continued to fear Shedric.

Sharonda also requested that the court grant her leave to move out of state. She testified that she had been offered a higher-paying position at a college in Texas. She also testified that the child was excited about the possibility of moving to Texas and wanted to go.

The record indicates that Shedric testified for several days. The two trial transcripts in the record contain his testimony on the subject of domestic violence during

5

the marriage. Shedric denied that he had physically abused Sharonda during the November 2009 incident and stated that she had verbally abused him. He explained that Sharonda was "volatile" when under stress and that his failed business endeavors had been causing her significant stress. Shedric also claimed that her motivation for seeking a restraining order was to portray herself as a victim and avoid paying spousal support, because she was the spouse financially supporting the family. He testified that she had initiated the domestic violence action so she could have the social life and lifestyle that she felt she could not have during the marriage.

Shedric questioned Sharonda's testimony that the child is afraid or anxious around him and insinuated that she was trying to influence the child against him. He also questioned the findings of the conjoint therapist and the child's individual therapist, claiming that they were biased against him.

The record contains the reports that the child's individual therapist and the conjoint therapist submitted to the court. Both therapists believed that the child had witnessed Shedric physically abuse Sharonda during the November 2009 domestic violence incident and that the child continued to fear Shedric. Both therapists also advised against increased visitation. In her report, the conjoint therapist stated that she was concerned about Shedric's continued refusal to accept responsibility for the domestic violence incident. She also reported that he had "flared into anger" when she was unable to meet with him privately after one of the conjoint sessions. She believed that if Shedric could lose his temper so quickly over a relatively minor scheduling issue, there was a risk

6

that he could lose his temper around the child if the child were to frustrate or irritate him. She also observed that Shedric was "having difficulty accepting the authority of the court" and she questioned his willingness to follow court orders. The conjoint therapist reiterated these concerns during her trial testimony.

After trial and submission of the parties' written closing arguments, the court issued a lengthy ruling containing its reasoning for issuing a three-year permanent restraining order against Shedric, awarding Sharonda sole legal and physical custody of the child, and ordering limited visitation with Shedric.

## DISCUSSION

1. *The restraining order*

Shedric contends that there was insufficient evidence to support the trial court's issuance of a permanent restraining order.

a. *Standard of review*

"The most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286 (*City of Santa Maria*).) When reviewing a trial court's judgment following a bench trial, " ' "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." ' " (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765.) The appellate court

7

" 'may not reweigh the evidence and [is] bound by the trial court's credibility determinations.' " (*Ibid.*)

The appellant has the burden of "furnishing an appellate court with a record sufficient to consider the issues on appeal." (*People v. Neilson* (2007) 154 Cal.App.4th 1529, 1534 (*Neilson*).)  Rule 8.830 of the California Rules of Court provides that "[i]f an appellant wants to raise any issue that requires consideration of the oral proceedings in the trial court, the record on appeal must include a record of these oral proceedings." (Cal. Rules of Court, rule 8.830(a)(2).)

"An appellate court's review is limited to consideration of the matters contained in the appellate record." (*Neilson*, *supra*, 154 Cal.App.4th at p. 1534.)  In the absence of an adequate record to support the appellant's claim of error, "we presume the judgment is correct." (*Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039.)

b. *Analysis*

Shedric's claim that there was insufficient evidence to justify issuing a restraining order under the Domestic Violence Prevention Act requires consideration of the evidence presented during trial, and he has only provided transcripts of two of the seven days of trial.  To the extent those two days of transcripts do not reveal substantial evidence in support of the restraining order, we would have to presume such evidence was contained in the missing portion of trial.  (See *City of Santa Maria*, *supra*, 211 Cal.App.4th at p. 286.)  " ' "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were

presented." ' " (*Buckhart v. San Francisco Residential Rent etc., Bd.* (1988) 197 Cal.App.3d 1032, 1036.)  Accordingly, the incompleteness of the record is ground alone to reject Shedric's challenge to the sufficiency of the evidence.  However, Shedric's challenge fails on the additional ground that our review of the two trial days in the record reveals substantial evidence to support the restraining order.

The Domestic Violence Prevention Act authorizes a court to issue a restraining order where a defendant intentionally or recklessly causes or attempts to cause bodily injury upon a spouse or a child, or places the spouse or child in reasonable apprehension of imminent serious bodily injury.  (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264; Fam. Code, §§ 6220 et. seq.)  Here, the record includes Sharonda's testimony about the November 2009 incident, which is consistent with her description in her request for a temporary restraining order filed shortly after the incident.  The record also includes the expert opinion of two therapists, both of whom believe that the child witnessed Shedric physically abuse Sharonda and that he continues to be afraid of Shedric.  It appears that the record does not contain all of Shedric's testimony; however, in the transcripts we do have, Shedric questioned the therapists' opinions, disputed Sharonda's description of the November 2009 incident, and asserted that she was the perpetrator of abuse.

The trial court weighed all of this evidence and found that Sharonda's version of the incident was credible and Shedric's was not.  It also found that the child had "reported to two highly trained and highly qualified professional therapists that he saw his father . . . choke his mother, and that, as a result, he was scared and fearful of his

9

father." It further found that Shedric "continues to deny any responsibility for the incident, and utilizes carefully nuanced language and a claim of therapist bias to refute the allegations against him. Despite the fact that he could have worked toward resolving these issues by, *inter alia*, conjoint therapy and anger management classes, he has refused to do so." Shedric provided testimony to the court, but the court was free not to believe him. (*People v. Dowl* (2013) 57 Cal.4th 1079, 1092 [trier of fact need not believe a defendant's explanations].) Based on the record we have, there was substantial evidence to support the restraining order.

Shedric's arguments concerning the degree of persuasiveness of the therapists' opinions or alleged conflicts in Sharonda's testimony are unavailing under a substantial evidence review. Conflicts in testimony " ' " 'and even testimony which is subject to justifiable suspicion' " ' " do not warrant reversal because " ' " 'it is the exclusive province of the trial judge or jury to determine the credibility of a witness.' " ' " (*People v. Hovarter* (2008) 44 Cal.4th 983, 1016.) It is only where the evidence cannot be deemed as substantial under " '[any] hypothesis whatever' " that reversal of a conviction is warranted. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

2. *The custody ruling*

Shedric contends that the court erred in issuing its custody ruling because it failed to apply the legal standard applicable to the termination of parental rights. He argues that by allowing Sharonda to move to Texas, the trial court "effectively terminated [his] parental rights." He is incorrect. The court did not terminate his parental rights. The

court issued a custody order and, in doing so, correctly applied the standard set forth in Family Code sections 3200 and 3011, which provide that the best interest of the child must be the primary concern in a court's determination of custody and visitation.

3. *The conjoint therapist*

Shedric argues that the court erred in failing to exclude the conjoint therapist's opinions because she had a conflict of interest and was unqualified to provide expert opinion. He asserts that the conjoint therapist had a personal relationship with Sharonda's attorney and that they had ex parte communications with one another in violation of Family Code section 216. He also asserts that the conjoint therapist became biased against him as a result of a billing "dispute." Shedric supports his claims of bias by citation to statutes and case law governing court-appointed child custody evaluators. We reject these claims because Shedric has not demonstrated any evidence of bias and because the conjoint therapist was not a court-appointed child custody evaluator.

Aside from pointing out the fact that the conjoint therapist's office is located "one block" away from Sharonda's attorney's office, Shedric has presented no evidence that the therapist and the attorney had a close personal relationship that caused the therapist to exhibit substantial bias against him. Sharonda's attorney represented to the court that the relationship between her and the therapist was professional, not personal. She stated that many of her clients had seen the therapist for counseling, and that while they have a "cordial" relationship over the phone, they had never met in person. The trial court found that Shedric had not shown any bias on the part of the conjoint therapist.

11

Unable to point to any evidence of a personal relationship, Shedric claims that Sharonda's attorney had ex parte communications with the conjoint therapist about the case in violation of Family Code section 216. Not only has Shedric failed to show any evidence of such ex parte communications, but also the Family Code section prohibiting ex parte communications between counsel and therapists applies to court-appointed child custody evaluators. (Fam. Code § 216, subd. (a).)[4] The conjoint therapist was not a child custody evaluator appointed by the court pursuant to Evidence Code section 730 and rule 5.220 of the California Rules of Court. The parties agreed to hire her as part of the October 2011 stipulation.

As to the billing issue, Sharonda's counsel's representations to the court, as well as the email communications attached to one of Shedric's filings, demonstrate that the issue was resolved in short order when the therapist determined that Sharonda would be covering the costs of the sessions because the child was not covered by Shedric's insurance. Shedric has provided no evidence that the therapist's professional neutrality was compromised by a minor billing issue. In short, we see nothing from our review of the record that indicates the conjoint therapist was biased against Shedric.

Lastly, Shedric contends that if the conjoint therapist was not court appointed and therefore "not bound by Cal. Rules of Court, Rule 5.220," she was nevertheless unqualified to provide expert opinion and he should have been given the "opportunity to

---

[4] This subdivision states: "In the absence of a stipulation by the parties to the contrary, there shall be no ex parte communication between the attorneys for any party to an action and any court-appointed or court-connected evaluator."

question [her] qualifications and training" under Evidence Code section 801. Shedric was given precisely this opportunity at the pretrial hearing where Sharonda presented the conjoint therapist as an expert and Shedric's counsel conducted voir dire. Despite his counsel's attempts to discredit the therapist's qualifications, the court found her "fully qualified to testify."

4. *Child Custody Evaluator*

Shedric argues that his due process rights were violated when the trial court decided not to appoint a child custody evaluator under Evidence Code section 730. Shedric does not have a due process right to a court appointed child custody evaluator.

Taken together, Evidence Code section 730 and rule 5.220 of the California Rules of Court provide that a court *may* appoint an expert child custody evaluator if it appears that such an evaluator would assist the court "in determining the health, safety, welfare, and best interest of children with regard to disputed custody and visitation issues." (Cal. Rules of Court, rule 5.220.) "The decision on the need for the appointment of an expert lies within the discretion of the trial court and the trial court's decision will not be set aside absent an abuse of that discretion." (*People v. Gaglione* (1994) 26 Cal.App.4th 1291, 1304, disapproved on other grounds in *People v. Martinez* (1995) 11 Cal.4th 434, 452 & *People v. Levesque* (1995) 35 Cal.App.4th 530, 539.) "[T]he trial court is never obliged to appoint an expert to assist it in making a factual, much less a legal, determination under Evidence Code section 730 unless, as that section provides, '*it appears to the court* . . . that expert evidence is . . . required.' " (*In re Eric A.* (1999) 73

Cal.App.4th 1390, 1394, fn. 4, italics original.)  Here, the court did not abuse its discretion in declining to appoint a child custody evaluator because it had ample evidence regarding the best interest of the child from the two therapists, the mediator, and the parties.

     5.  *Ineffective assistance of counsel*

Finally, Shedric contends that the attorney who represented him during many of the pretrial proceedings provided ineffective assistance of counsel.  He claims that his attorney failed to explain the significance of signing the October 2011 stipulation and that he never would have agreed to sign a document that named him as the perpetrator of domestic violence and selected a therapist who had a close personal relationship with Sharonda's attorney.  Shedric also asserts that his attorney's license to practice law was suspended during the period he was representing him.

Shedric's claims about his attorney's performance and ethics are misplaced on appeal.  A party to a civil action is not entitled to a retrial based on ineffective assistance of counsel.  (*Chevalier v. Dubin* (1980) 104 Cal.App.3d 975, 979-980; see *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1574-1575 [husband's ineffective assistance of counsel argument was "moot" because there is no right to counsel in marriage dissolution proceedings].)  Thus, even if Shedric had pointed to specific examples of deficient performance on the part of his attorney that resulted in prejudicial harm to his case, which he has not, his argument would nevertheless be moot.

14

We affirm the trial court's judgment.

Respondent shall recover her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON         

J.

We concur:

KING         
        Acting P. J.

MILLER       
        J.